## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **DESTINED C.M.D. GEORGE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:19CV00631 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **DR. P. MOORE, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Destined C.M.D. George, Pro Se Plaintiff; Rosalie P. Fessier and Brittany E. Shipley, TIMBERLAKESMITH, Staunton, Virginia, for Defendants.*

The plaintiff, Destined C.M.D. George, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that the defendants, a dentist and dental assistant, provided him with inappropriate dental care and retaliated against him for filing grievances.  Presently before the court are the defendants' Motion for Summary Judgment and George's responses thereto.  After careful review, I conclude that the defendants' motion must be granted.

### I.  BACKGROUND.

George is confined at Red Onion State Prison ("Red Onion").  In his Amended Complaint,[1] filed in November of 2019, George alleges that on April 8, 2019, he

---

[1]  After reviewing George's initial § 1983 Complaint, the court notified him that he had misjoined claims and had failed to state specific facts about what each defendant personally had done to violate his constitutional rights.  George then filed the Amended

"was given a filling in the wrong tooth, even after the defendants [Dr. P. Moore and R. Hubbard] stated they couldn't see any cavities on the x-Ray."  Am. Compl. 1, ECF No. 12.   The cavity that George had asked them to fill allegedly remained untreated.  George complains that the new filing started causing him "excruciating pain."  *Id.*  He was also prescribed "Boost nutritional supplements and pain pills," which he characterizes as proof that the defendants "knew there was negligence on their part and [he] was really having trouble eating."  *Id.*  He states, "The following fillings they've given me also cause continuous pain."  *Id.*  George claims that he "lost approximately 40 [pounds] after allowing them to operate on" him.  *Id.*

After George "submitted complaints about their malpractice," the defendants allegedly retaliated against him by "giving [him] another painful filling and defendant R. Hubbard becoming aggressive with the dental utensils."  *Id.* at 2. Specifically, George states that on July 8, 2018,

> Hubbard shoved the mouth x-ray into my throat making me gag.  She then removed the x-ray and said, "Stop."  With a look of pure disgust she then reinserted the mouth x-ray even deeper once again choking me[.  S]he then snatched the x-ray out and became argumentative and verbally aggressive with me and told the g[ua]rd that I was not cooperating.

Am. Compl. George Decl., ECF 12-2.

---

Complaint that is now before the court.  While I liberally construe and recite George's allegations in that pleading, I make no factual finding.

In his Amended Complaint, George asserts the following claims against the defendants:  (1) medical malpractice on April 8, 2019, by filling the wrong tooth and leaving his cavity untreated; (2) cruel and unusual punishment, in violation of the Eighth Amendment, on April 8, 2019, by filling the wrong tooth and causing pain and weight loss; (3) unreasonable search and seizure on April 8, 2019, for filling the wrong tooth; and (4) retaliation against George for filing grievances, in violation of the First Amendment, through (a) giving him another painful filling on an unspecified date and (b) Hubbard's alleged aggressiveness with X ray utensils on July 8, 2019.  As relief, George seeks monetary damages.[2]

The defendants have filed a Motion for Summary Judgment, arguing that George failed to properly exhaust administrative remedies as required under 42 U.S.C. § 1997e(a) or, in the alternative, that his claims are without merit.  George has responded to both facets of the motion, making it ripe for disposition.

## II.  DISCUSSION.

### A.  The Summary Judgment Standard.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists "if the evidence

---

[2]  George also sought preliminary injunctive relief, which I have earlier denied.

is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. A mere scintilla of evidence supporting the case is insufficient.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).[3]

The defendants have filed supporting affidavits and documentation. Accordingly, to avoid summary judgment, George must present sufficient evidence that could carry the burden of proof of his claims at trial. He "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor. *Anderson*, 477 U.S. at 248.

A pro se litigant's verified complaint must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "[U]nsupported speculation is not sufficient to defeat a

---

[3]  I have omitted internal citations, quotation marks, and/or alterations here and throughout this Opinion, unless otherwise noted.

summary judgment motion," however.  *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

## B. Exhaustion of Administrative Remedies.

A prisoner must exhaust any available administrative remedies before challenging prison conditions in federal court.  *See* 42 U.S.C. § 1997e(a). Exhaustion is mandatory under § 1997e(a).  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  "[F]ailure to exhaust is an affirmative defense" and, therefore, it must be both pled and proven by the defendants.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The Supreme Court has also instructed that § 1997e(a) "requires proper exhaustion."  *Woodford*, 548 U.S. at 93.  Proper exhaustion means using all steps of the available administrative remedy procedure and doing so according to its rules and timetables, so that the agency addresses the inmate's issue on the merits.  *Id.* at 90.  Thus, an "untimely or otherwise procedurally defective administrative grievance" does not satisfy § 1997e(a).  *Id.* at 83–84.

An inmate who failed to properly exhaust may escape summary judgment under § 1997e(a), if he states facts showing that the remedies under the established grievance procedure were not available to him.  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones.").  Generally, "an administrative remedy is not considered to have

been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

In support of their motion, the defendants have filed a declaration from J. Messer, the Human Rights Advocate at Red Onion.  Mem. Supp. Mot. Summ. J. Ex. A, Messer Decl., ECF No. 29-1.  Messer states that she is responsible for maintaining inmate grievance files at Red Onion.  Operating Procedure ("OP") 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a).  *Id.* at Ex. A-A.

Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concern informally — verbally and then in writing on an Informal Complaint form.  Once an inmate's Informal Complaint is properly filed, he should receive a written response to the issue he raised within fifteen calendar days.  If dissatisfied with the response, he may file a Regular Grievance on the issue and attach the Informal Complaint as documentation of his informal attempt to resolve the issue.

The inmate must file a Regular Grievance within thirty days of the occurrence about which it complains.  A properly filed Regular Grievance will trigger an investigation, on which the warden or his designee will send the inmate a Level I response.  The inmate should receive a Level I response within thirty days from the date of receipt, unless a continuance of up to thirty days is granted.  OP

866.1(VI)(D).  If the responding official determines the grievance to be unfounded, the inmate will have five days to appeal that holding to Level II, and in some cases, to Level III of the grievance procedure.   OP 866.1(VI)(D)(6).   The procedure provides that even if an inmate does not receive a response to his Regular Grievance, he may appeal:  "Expiration of a time limit (to include any authorized continuance) at any stage of the process shall be considered a denial and *shall qualify the grievance for appeal to the next level of review*."  OP 866.1(VI)(D)(5) (emphasis added).

If a Regular Grievance does not meet the filing requirements of OP 866.1, it should be returned to the inmate filer within two days from receipt, with the reason for the return indicated on the back of the form.  Reasons for return on intake may include failure to attach the Informal Complaint, addressing more than one issue, or an expired filing period.  The intake response will instruct the inmate about any actions he may take to remedy the problem.  If the inmate disagrees with the reason for rejection of his Regular Grievance at intake, he may appeal the intake decision by sending it to the Regional Ombudsman for review.  The grievance office retains a copy of all Regular Grievances that are rejected at intake and returned to the filer inmate.

Messer states that based on her review of George's grievance file, George never filed any timely Informal Complaint or Regular Grievance about any of his

claims in this action.  Moreover, Messer's exhibits of George's exhaustion efforts received in her office indicate although George was notified of his right to appeal, he did not properly file any appeals.  Therefore, the defendants argue that he failed to properly exhaust his available administrative remedies as to his claims in this case.

In response to the defendants' motion, George has filed a declaration, signed under penalty of perjury.  He contends that contrary to the defendants' evidence, he submitted timely Informal Complaints and Regular Grievances about some of his current claims.

George states that on April 10, 2019, he submitted an Informal Complaint about receiving a filling in the wrong tooth on April 8, 2019.  When he received no response by April 26, 2019, he submitted a Regular Grievance.  He did not receive a Level I response by May 27, 2019, so he submitted a Regular Grievance appeal at that time, asking for a Level II response.

George also states that on July 8, 2019, he submitted his initial Informal Complaint about Hubbard's aggressiveness with dental utensils.  He claims that he did not receive any response by the required deadline of July 13, 2019, so he submitted a Regular Grievance.  When he did not receive a Level I response by August 24, 2019, George sent a Regular Grievance appeal, seeking Level II response.

George asserts that these efforts, submitted through the institutional mail or the postal service, satisfied the exhaustion requirement under the OP and § 1997e(a). The defendants, in reply, note that George fails to support his exhaustion arguments with copies of the forms he claims to have filed. They also argue that if George had properly submitted his purported Informal Complaints and Regular Grievances, per OP 866.1(V)(B)(3) and (VI)(B)(3), officials should have provided him with a receipt for each document. The defendants present no evidence, however, that an inmate at Red Onion can personally present his remedy forms to the grievance office. They also offer no evidence as to whether Red Onion provides receipts, what recourse an inmate would have if a form he sent was never received by the proper official, or how an inmate could be expected to keep a copy of a form after he had submitted it for consideration, when he also claims to have received no response.

Taking George's verified declaration in the light most favorable to him, I find material factual disputes on which George could conceivably persuade a fact finder to rule in his favor on exhaustion as to claims (1), (2), (3), and (4)(b), alleging that the defendants filled the wrong tooth on April 8, 2019, causing him pain and weight loss, and that Hubbard retaliated against him on July 8, 2019. Specifically, George alleges that he submitted timely Informal Complaints and then Regular Grievances, received no responses, and nevertheless, attempted to continue to seek Level II responses, as the OP 866.1 procedures appear to permit. Therefore, I cannot grant

the defendants' motion as to his claims concerning these two incidents on the ground that he failed to exhaust available administrative remedies.

George offers no evidence, however, creating a material factual dispute on which he could prove that he properly exhausted administrative remedies as to claim (4)(a), or that such remedies were not available to him.  There is no evidence in the record that George properly filed an Informal Complaint, followed by a Regular Grievance and appeals, regarding his allegation that the defendants gave him another painful filling after April 8, 2019, to retaliate against him for filing grievances. Therefore, I will grant the defendants' Motion for Summary Judgment as to claim (4)(a) on the ground of failure to exhaust in compliance with 42 U.S.C. § 1997e(a).

## C.  The Dental Care Claims.

### 1.  *The Defendants' Evidence.*

The claims remaining before the court concern two dental incidents: a filling allegedly placed in the wrong tooth on April 8, 2019, and a cavity allegedly left untreated that day, causing pain that resulted in weight loss; and Hubbard's alleged retaliatory aggression with X-ray equipment on July 8, 2019.  In support of their motion, the defendants present their declarations and copies of medical records concerning care George received at Red Onion in 2019.  Mem. Supp. Mot. Summ. J. Ex. B, Moore Decl. & Ex. C, Hubbard Decl., ECF Nos. 29-2 & 29-3; Resp. Opp'n Prelim. Inj. Kiser Aff. ¶¶ 4, 6, ECF No. 22-1.

Dr. Moore, a Doctor of Dental Medicine ("DMD"), and Hubbard, an Expanded Duties Dental Assistant ("EDDA"), were employed at Red Onion between April and the fall of 2019 to provide dental services to its inmates. As an EDDA, Hubbard is not permitted by Virginia law to render a final diagnosis or to engage in treatment planning for a dental patient, such as determining which teeth should or should not be filled. She also states that she did not place fillings in any of George's teeth. Both Dr. Moore and Hubbard have stated that if they had observed any abnormalities of George's teeth, or if he had voiced any complaints, they would have noted so in his medical record.

At Red Onion, the dental staff does not conduct medication distribution or otherwise have regular, direct contact with inmates. Rather, the dental staff will see inmates who have placed a request for treatment in the dental office or who have been referred by the regular Red Onion nursing staff for dental care.

Dr. Moore saw George in the dental office on April 8, 2019, after George filed a request asking to have the "holes" in his teeth fixed. Dr. Moore Decl. ¶ 17, ECF No. 29-2. George reported that some teeth on the top and bottom left side were sensitive to cold and sweets. X rays and an examination of George's teeth indicated to Dr. Moore that the inmate had signs and symptoms of reversible pulpitis on tooth

number 18, the second left lower molar.[4]  After a local anesthetic was administered, Dr. Moore prepared tooth 18 for restoration by applying TheraCal, a bonding agent, and a synergy restorative material.  After filling tooth 18, Dr. Moore adjusted George's bite and performed a hard and soft issue examination.  He issued an order for George to return to the dental office for an operative appointment concerning teeth numbers 14 and 15, his upper left first molar and upper left second molar respectively.

George presented to Hubbard on May 23, 2019, for a dental exam, after complaining of sensitivity to cold in tooth number 18.  X rays were performed, and it was noted that George was already scheduled for more tests.  Notes from that date also report that George asked for Motrin instead of Tylenol and requested Boost, a nutritional supplement.  No report of weight loss was noted, however.  A verbal order prescribing Advil and Boost was entered.  On June 12, 2019, Hubbard rescheduled George's dental cleaning, because no escorts were available to transport

---

[4]  Reversible pulpitis is inflammation of the dental pulp, often identified through X rays or symptoms such as sensitivity to cold; the tooth can generally be saved, and the sensitivity eliminated, through applying a simple filling.  *See* Hennessy, Bernard J., Pulpitis, DDS, *Pulpitis,* MSD MANUAL PROFESSIONAL VERSION MEDICAL TOPICS (last revised June 2019), https://www.msdmanuals.com/en-gb/professional/dental-disorders/common-dental-isorders/pulpitis#:~:text=In%20reversible%20pulpitis%2C%20pulp%20vitality%20can%20be%20maintained,in%20the%20tooth%20and%20the%20pulp%20is%20removed.

him to the dental office.  On June 17, 2019, Hubbard entered a verbal order from a Red Onion nurse, prescribing Advil and Boost.

Dr. Moore saw George for a dental evaluation on June 25, 2019.  George was complaining of pain in the tooth number 18 filling and cavities on the upper left side. Upon examination, Dr. Moore noted no swelling and no loss of any tooth or filling. He applied local anesthetic, evaluated tooth 18, and adjusted the occlusion on the filling—the point of contact between that tooth and the tooth on the opposing jaw. Dr. Moore also reviewed the X rays of George's teeth, performed on May 23, 2019, and found everything to be within normal limits.  Then, he prepared teeth numbers 14 and 15, applied TheraCal, and restored them with a Fuji glass ionomer filling. He noted that the procedures on all three teeth were noncomplicated and well tolerated.  The records indicate that on June 27, 2019, another Red Onion medical provider reduced George's ibuprofen dosage from four capsules, twice per day, to three capsules twice per day.

Dr. Moore saw George again on July 8, 2019, for complaints of continuing pain in his teeth on the upper and lower left side.  George identified the teeth Dr. Moore had previously filled as problematic.  Dr. Moore ordered a periapical X ray, which offers a more in-depth diagnostic view than the bitewing X ray.

Hubbard attempted to perform the diagnostic X ray, but George was uncooperative and tried to bite her.  Hubbard denies that she used dental tools

aggressively on George and denies that she took any action against him in retaliation for grievances he may have filed. Eventually, George allowed Hubbard to complete the X ray.

Dr. Moore then adjusted George's bite on teeth numbers 14, 15, 18, and 19, and made multiple attempts to ensure that the fillings in those teeth had no interfering contact points. George was advised that according to past and current X rays, the depth of the fillings was not an issue, and no swelling or loss of tooth matter was present. The X rays did reveal that tooth 19 contained an old filling that was not deep. George was advised that adjusting the bite correctly is difficult and often requires occlusional adjustments to be made or re-evaluated after a new filling, once the numbness of the anesthetic has resolved, to allow for a more accurate bite for evaluation purposes. George mentioned a hole in his tooth, but the dental staff advised him that their tests and examination had not revealed any hole or tooth loss.

On July 15, 2019, George requested treatment for pain in the teeth that Dr. Moore had adjusted on July 8, 2019. Dr. Moore noted in the record that George had not presented with any severe pain on July 8, 2019, and that the inmate reported being less bothered by some food items than before that appointment. Dr. Moore prescribed Tylenol and Advil for George's reports of pain and noted that sedative restorative fillings might be needed if the issue continued.

On July 16, 2019, Dr. Moore answered a request from George, complaining that his fillings were causing him pain and weight loss.  George requested Boost. Dr. Moore reviewed George's medical chart, starting at his arrival at Nottoway Correctional Center ("NCC") in July of 2017, when medical staff noted his weight was 264 pounds.  In December of 2018, when George arrived at Red Onion, medical staff noted his weight at 238 pounds.  By July of 2019, medical staff recorded George's weight at 217 pounds, thus indicating a steady, slow weight loss over two years since George had entered VDOC custody.  Dr. Moore consulted with a Red Onion nurse practitioner, who reviewed records and confirmed that George had never requested a medical examination for which he complained that pain in his mouth or teeth was causing him to lose weight.  The nurse practitioner also advised that George's current weight was well within the healthy weight range for a man of his height.  Based on this information and his own notes, Dr. Moore found that George's dental treatment could not be related to his weight loss.  In response to the inmate's request, Dr. Moore wrote:

> Mr. George I have evaluated your complete medical and dental record. Your weight was checked in medical on 7-15-19.  Upon evaluating your medical history you are correct in that you have lost weight.  [T]he weight loss however has been consistent since your arrival at [NCC], through your time at Sussex II and now to here at Red Onion.  Your history was evaluated with medical and you have been losing weight prior to having any dental work.  For your height, your current weight is well within range and no Boost will be ordered.  If you are concerned about your weight loss you can request blood work through medical.

> We will leave you on the dental list to replace your fillings with a different type of filling material.

Resp. Opp'n Mot. Summ. J. Ex., at 8, ECF No. 44-2.

Dr. Moore next evaluated George's dental chart on August 26, 2019.  George was not able to focus his complaints about his tooth pain to a particular tooth, other than repeating his continued claim that the problem teeth were those on which Dr. Moore had recently performed procedures.  Dr. Moore noted that the filling in tooth 19 had not been performed at Red Onion.  He recommended that if the issue continued and if George could clearly identify tooth number 18 as the source of the pain, he would consider replacing the fillings in teeth numbers 18 and 19 with medicated fillings after George's cleaning scheduled for August 27, 2019.  The dentist also prescribed Advil and Tylenol.

On October 28, 2019, another Red Onion dentist examined George for complaints of sore teeth, especially when chewing with his sealed teeth.  The provider noted that George did not complain of tooth sensitivity to sweets, hot, or cold, or when the provider tapped on his teeth.  The examination and X rays indicated that George's teeth were intact and that the fillings he had were also intact and permanent.  The dentist also checked his bite and evaluated him for tooth grinding.  Ultimately, the provider noted that a bite guard would be made for George.  This provider did not note any finding that the restorations in teeth numbers 18 and 19 needed to be replaced.

The defendants have also provided evidence indicating that between May 13, 2019, and September 16, 2019, nurses offered George two to four doses of Tylenol or Ibuprofen every day, as prescribed for pain related to his dental work or other unrelated medical issues. Many of these doses George refused, often stating that he did not need the medication. The defendants' evidence also indicates that during the spring and summer of 2019, George's weight fluctuated between 220 and 248 pounds. A man who stands 5 feet, 11 inches tall, would not be considered underweight if he weighed more than 133 pounds. In fact, George's height and weight during this period qualified him as obese on a standard body mass index. Nevertheless, George was prescribed a Boost nutritional supplement from May 24 to June 2, and from June 17 to 27, 2019.

### 2.  *The Eighth Amendment Standard.*

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To hold an official liable under § 1983, the plaintiff must state facts to affirmatively show that the officer acted personally to deprive the plaintiff of, or violate his, constitutional rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

An inmate's Eighth Amendment protections against cruel and unusual punishment include a right to the medical care necessary to address his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). Specifically, a prison official's "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

The medical need portion of this legal standard is objective. It requires facts showing that the inmate's medical condition is "serious — one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* "As courts of appeals have recognized, a 'tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction,'" and presents a serious medical need. *Formica v. Aylor*, 739 F. App'x 745, 756 (4th Cir. 2018) (unpublished) (quoting *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000)).

The other, deliberate indifference portion of the constitutional standard is subjective. The plaintiff must show that each defendant knew of and disregarded an excessive risk to inmate safety or health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). It is not sufficient to show that an official should have known of a risk; he

or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk of harm posed by the official's action or inaction. *Jackson*, 775 F.3d at 178. "This deliberate indifference standard is not satisfied by a showing of mere negligence, a mere error of judgment or inadvertent failure to provide medical care, or mere disagreement concerning questions of medical judgment." *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished); *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("[T]he essential test is one of medical necessity and not simply that which may be considered merely desirable").

### 3. The Deliberate Indifference Claims.

In response to the defendants' evidence, George states under penalty of perjury that the defendants: (a) placed a filling in a tooth that had no cavity, and that filling has caused him "on-going excruciating pain," Resp. Opp'n Mot. Summ. J. ¶ 3, ECF No. 44; (b) delayed responding to his complaints of dental pain, in violation of VDOC policy; (c) removed his order for Boost despite knowing his dental pain was causing him to lose weight; and (d) "refused to remove or replace filling even though [they] suggested it," *id.* at ¶ 6.[5] In support of these assertions, George offers

---

[5] George also states that the defendants "inserted another painful filling" on June 25, 2019, and told him to chew on the other side, allegedly in retaliation for his filing grievances. Resp. Opp'n Mot. Summ. J. ¶ 7, ECF No. 44. I have already determined, however, that as to this claim, the defendants are entitled to summary judgment because George failed to exhaust administrative remedies.

photocopies of X rays of teeth.  George does not dispute the accuracy of these or the other medical records the defendants have submitted.  In fact, he submits copies of them as exhibits to his own pleadings.  George does not provide any other medical evidence or diagnoses from any other medical provider in support of his claims.

Even taking the record in the light most favorable to George, as required on summary judgment, I cannot find that he has presented disputed facts on which he could prevail at trial on any of his Eighth Amendment claims.  The undisputed medical records indicate that George received dental care or professional evaluations of his dental needs on numerous occasions during the period at issue.  He received X rays several times, in addition to multiple in-person examinations and dental procedures to address the dental problems that Dr. Moore identified, in his professional judgment.  George was also provided with access to pain medication, although he often refused it.  Thus, he has not demonstrated that anyone ignored his dental complaints or his pain.

George asserts that the defendants filled the wrong tooth on April 8, 2019.  He offers nothing, however, in contravention of Hubbard's evidence that she had no lawful authority and did not apply any filling or make any determination about the proper placement of a filling in George's teeth.  George also offers nothing more than his layman's opinion that Dr. Moore applied a filling that day to a healthy tooth or that the dentist ignored an obvious cavity elsewhere.  A patient's mere

disagreement with the dentist's professional judgment as to the proper course of treatment does not support a finding of deliberate indifference.  Nor can I, as the judge, second-guess the appropriateness of Dr. Moore's treatment decisions. Neither George nor I have the professional expertise to read the X rays in the record or to diagnose and decide proper treatments for dental conditions that may be reflected in those X rays.

George also complains about the defendants' responses to his complaints of dental pain after the procedures Dr. Moore performed in April and June of 2019. George cites a VDOC policy about what sort of dental complaint should receive prompt attention.  A mere violation of a state policy, even if George could prove one, does not support a constitutional claim.  *See United States v. Caceres*, 440 U.S. 741, 752–55 (1979) (allegations that officials have not followed their own policies or procedures, standing alone, do not amount to constitutional violations).

Moreover, the medical records belie George's claims that the defendants ignored his tooth pain.  He offers no evidence to dispute indications in the record that he had access to medication to address his pain.  Whenever Dr. Moore received notice that George was complaining of pain, he either evaluated the inmate in person or reviewed his chart and exercised his medical judgment to determine an appropriate course of action to address George's dental condition.

George apparently believes that Dr. Moore and Hubbard should have scheduled him for replacement of the troublesome fillings with a different substance. Again, George offers no evidence that Hubbard had authority to change the filling or order a replacement.   The record indicates that Dr. Moore made professional judgments that George's dental conditions were first most appropriately addressed in other ways — through pain medication, adjusting the occlusion between the affected teeth, and waiting to see if the pain resolved or became more focused over time on one tooth or area before considering replacement of any fillings.   George apparently believes that Dr. Moore's responses were slow and inadequate.   Such disagreements with professional decisions about particular treatments and their timing do not support a finding of deliberate indifference as required to prove a constitutional violation.   Moreover, another provider who examined George in October 2019 did not determine any need for replacement fillings.   Instead, he ordered a mouth guard for George to try as a means of addressing his pain complaints.

Finally, George blames Dr. Moore and Hubbard for discontinuing his prescription for Boost.   The record does not support this contention for several reasons.   First, I find no indication that Dr. Moore ever prescribed Boost for George. Hubbard is prohibited by law from prescribing or discontinuing a medication.   *See* 18 Va. Admin. Code § 0-21-130(3).   She merely recorded another provider's

prescription for the supplement on some occasions.  More importantly, however, George fails to provide evidence that his condition ever presented a serious medical need to receive any nutritional supplement.  It is undisputed that his weight during the period at issue did not drop significantly and that it was never within a range that could be considered underweight for a man of his height.  Moreover, Dr. Moore advised George that if he believed he had a medical need for Boost, he could request it through the medical staff.  Thus, I cannot find that the defendants knew their failure to provide George with a prescription for Boost placed him at any serious risk of harm as required to show deliberate indifference.

For the reasons stated, I simply cannot find that George could persuade a fact finder that Hubbard or Dr. Moore acted with deliberate indifference to any serious medical need, related to the dental procedures performed on him in 2019.  I will, therefore, grant their motion for summary judgment as to claim (2).

### 4.  The Fourth Amendment Claim.

George also claims that by allegedly filling the wrong tooth on April 8, 2019, the defendants violated his Fourth Amendment "right to be free from unwarranted seizures."  Am. Compl. 2, ECF No. 12.  "The Fourth Amendment protects against unreasonable searches and seizures.  Searches without probable cause are presumptively unreasonable, but if an individual consents to a search, probable cause is unnecessary." *United States v. Robertson*, 736 F.3d 677, 679 (4th Cir. 2013); *see*

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (recognizing that consent is "one of the specifically established exceptions to the requirements of both a warrant and probable cause").

The record simply offers no support for a claim that the defendants provided George dental care to tooth number 18 without his consent.  In fact, George has never specified any particular tooth that he claims should have been filled on April 8, 2019, instead of tooth number 18.  On the contrary, it is undisputed that the defendants provided George dental care on April 8, 2019, only because he had filed a request asking to have the holes in his teeth fixed.  The record indicates that Dr. Moore evaluated the condition of George's teeth, determined that tooth number 18 needed attention that day, performed a restoration procedure on that tooth, and ordered a future appointment to address issues in two other teeth.  Furthermore, George fails to offer viable evidence that tooth number 18 had no issue warranting the procedure that Dr. Moore performed or that Hubbard had any personal involvement in that procedure or its planning.  I will grant the defendants' motion as to George's Fourth Amendment claim.

### 5. The Retaliation Claim.

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable [under Section 1983] because retaliatory actions may tend to chill individuals' exercise of constitutional rights."  *ACLU v. Wicomico Cnty.*, 999

F.2d 780, 785 (4th Cir. 1993).  Specifically, prison officials may not take actions that violate an inmate's First Amendment "right to file a prison grievance free from retaliation." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017).

> [T]o state a colorable retaliation claim under Section 1983, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.

*Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018).  Inmates also "must come forward with specific evidence establishing that *but for* the retaliatory motive, the complained of incident . . . would not have occurred." *Oliver v. Myers*, No. 7:08-cv-00558, 2008 WL 5212409, at \*5 (W.D. Va. Dec. 12, 2008) (emphasis added).

George simply fails to make all of these showings.  He does not present any evidence that Hubbard knew of any grievance he had filed about her before his appointment on July 8, 2019.  George also states no facts on which he could prove that Hubbard used the X ray equipment that day in any manner unrelated to obtaining the medical results that Dr. Moore had ordered.  George's claim rests on nothing more than his description of some discomfort he experienced while being X-rayed,[6]

---

[6] George does not frame an Eighth Amendment claim against Hubbard arising from this incident.  In any event, such a claim would fail.  He cannot show that Hubbard knew of an excessive risk that giving him an X ray posed (or caused) him any serious physical harm. *Jackson*, 775 F.3d at 178.

and his unsupported, speculative assertion that Hubbard acted as she did in order to retaliate against him for a prior grievance he had filed.  Because George's allegation of retaliation is, thus, devoid of factual support, I will grant the defendants' motion as to his claim (4)(b), alleging Hubbard's retaliatory use of X ray tools.

### 6. The State Law Claims.

Section 1983 was intended to protect only federal rights guaranteed by federal law.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).  Any claim of medical negligence or even malpractice under state law is thus not independently actionable under § 1983, and I decline to exercise supplemental jurisdiction over them in this action.  *See* 28 U.S.C. § 1367(c).  I will dismiss all such claims without prejudice.

### III.  CONCLUSION.

For the reasons stated, it is **ORDERED** that the defendants' Motion for Summary Judgment, ECF No. 28, is GRANTED; all claims under 42 U.S.C. § 1983 are DISMISSED WITH PREJUDICE; and all claims under state law are DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1367(c).

A separate Judgment will enter herewith.

ENTER:   September 30, 2020

/s/  JAMES P. JONES
United States District Judge